The opinion of the Court was read as drawn up by
Parker C. J.
If the coaches were not liable to attachment, it must be because they were chattels actually in use, not because they could not be returned in the same plight, which was the ground on which Bond v. Ward was settled. If any thing is capable of being returned in the same plight, it is such a vehicle, for being kept under cover, it will be more valuable than if all the time in the use of the owner. As to their being actually in use, we should not be willing to decide that on that account alone they were not attachable, for the same reason will apply with equal force to ships, steamboats, and other marine vehicles employed in the transportation of goods or passengers, and I believe it has never yet been doubted, that under our laws such property is attachable. We think however that it is not necessary to decide the question thus broadly, viz. that a ship or vessel actually under weigh with freight or passengers, or a stagecoach actually on the road travelling, is attachable. There is difficulty in that question on both sides, but we feel clear that neither of the coaches was so in use when attached, as to be exempted. One was preparing to go out, with two of the *372 horses hitched on, and the passengers engaged but not seated. We see not why, if the horses were in the barn harnessed and ready to be put to the coach, or the passengers had entered their names on the stage book the day before, the same reason .for exemption would not exist. With respect to the other coach, it had arrived at its destined place, and although two female passengers were remaining in it expecting to be carried to their places of residence, yet this • was not necessary, for they might have walked home, or the driver might without much inconvenience, if he was bound to see them at their houses, have provided other means of conveying them and their baggage.
It is said that property thus situated was not subject by the common law to distress for rent, and that the same law is to determine what property is or is not attachable under our statutes. •
. The principles of the common law will undoubtedly apply, because founded on reason, but the application of these principles may be different now, from that which was made- several hundred years ago, when the rule was laid down. .The state of -the country then required larger exemptions than at present. Every thing ■ then was subservient to agriculture. Now commerce and credit assume an equal rank, and things which were necessary for a man’s living at a former period, have ceased to be so.. And the parliament of Great Britain has regarded the change of circumstances in that kingdom, by providing in St. 2 W. & M. c. 5, that sheaves or shocks of corn, or corn in the straw, or loose, or hay upon a hovel, stack ’ or rick, or otherwise, on the land, may be distrained for rent- on a demise, lease or contract. And by St. 11 Geo. 2, c. 19, landlords are ■ empowered to distrain all sorts of corn, grass, or other product growing on the estate demised, and to cut and gather them when ripe. These statutes, it is true, do not operate ■ in this country, but the immemorial usage of the commonwealth under the various attachment lawfs, has a force equally binding; and several judicial decisions have, occured, in which it has been considered, that as the reasons of the old common law have ceased, so also has the law ceased. Thus in the case of Campbell v. John *373 son, 11 Mass R. 184, it was determined, that hay in a barn is liable to be attached on mesne process,[1] and Sewall C. J. expressly states as a ground of decision, that the condition of husbandry with us, and the circumstances of the country, did not require the application of the rule which the. ancient common law was supposed to furnish. And in the case of Penhallow v. Dwight, it was decided, that corn standing in the field, if ripe, might be cut down and seized in execution.
The cases put in Com. Dig. to illustrate the general position, that chattels in actual use are not to be taken in distress, show that the rule was applied to things comparatively of small value, and such as could not be taken without great inconvenience, and in some, of the cases they were other persons’ property accidental]/; upon the land ; a horse actually in riding, or going to mill, or s^Ming at the miller’s door, &c. To apply a rule which had protected such kind of property, to articles of luxury, or of great value, would be contrary to the reason of the common law. Stagecoaches are often of great value, and many of them owned by the same person. Ships, steamboats, &c., come within the same reason ; creditors, and credit itself, would be exceedingly injured, if they were held free from attachment.[1]
Our legislature seems to have considered the common law in this respect as obsolete, or repealed by usage, in the several statutes they have enacted, exempting articles of small value, but of great necessity, from attachment.[2]

Plaintiff nonsuit.

 See Merrill v. Bryant, 8 Pick. 397.

 It is held in Tennessee, that the tools of a mechanic may-he levied on to satisfy a judgment against him, while he is using them. Bell v. Douglass, 1 Yerger, 397. See Howard v. Williams, 2 Pick. (2nd ed.) 84, note 1.

 As to what articles are subject to attachment and execution, see Revised Stat. c. 90, § 24, — c. 97, § 19, 20, 21; as to what are exempted, see Revised Stat. c. 97, § 22.